[Crim. No. 19644. Feb. 17, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES K. KAANEHE, Defendant and Appellant.

**COUNSEL**

Robert E. Murphy, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Emry J. Allen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, J.*—**James K. Kaanehe appeals from a judgment entered upon negotiated pleas of guilty to one count of grand theft (Pen. Code, § 487)[1] and to one count of petty theft with a prior felony conviction (§§ 484, 667). Twelve additional counts charging similar crimes were dismissed in accordance with the plea bargain. The pleas were entered after the court denied defendant's motions to dismiss the indictment (§ 995) and to suppress evidence (§ 1538.5).[2]

Defendant contends on appeal (1) that the trial court erred in failing to warn him of the effects of a guilty plea on his right to appeal; (2) that the trial court erred in refusing to postpone the trial date; (3) that records voluntarily surrendered to law enforcement officials by defendant's bank without aid of legal process should have been suppressed in accordance with *Burrows* v. *Superior Court* (1974) 13 Cal.3d 238 [118 Cal.Rptr. 166,

---

*Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council.

[1]All statutory references are to sections of the Penal Code unless otherwise specified.

[2]The court, however, granted the motion to dismiss as to an additional count charging perjury. (§ 118.)

529 P.2d 590]; and (4) that the trial court also erred in refusing to permit him to withdraw his guilty plea after the prosecution breached the plea bargain agreement. We conclude that the first two issues are not properly raised on appeal. We further conclude that the trial court was correct in denying the motion to suppress the bank records because we hold that *Burrows* is not to be applied retroactively. We conclude, however, that the prosecution breached the plea bargain agreement and that defendant is entitled to be rearraigned for sentencing, or, at his option, to withdraw his guilty pleas and to again be arraigned on all charges contained in the indictment other than the perjury charge. (See fn. 2.)

Defendant is the owner and operator of Arlington Memorial Cemetery in Sacramento. It was alleged that he induced eight persons to buy plots in the cemetery by promising that $26 of the purchase price of each plot would be deposited in a trust to provide for the care and upkeep of the cemetery and that defendant diverted that money to his own use. It was further alleged that defendant diverted to his own use the installment payments of three purchasers of cemetery plots and money paid for a grave marker which was never installed.

Howard Sihner, an investigator from the district attorney's office, contacted the bank that was the trustee of the trust fund for the general care of the cemetery and asked to see the records of that account. After refusing initially, the bank gave Sihner a summary of the records. This summary indicated that checks for $716 and $205, which constituted income disbursements from the trust fund, had been endorsed by the defendant to a car leasing agency. Sihner was advised by that agency that the checks had been delivered by defendant in payment for his leased auto. Sihner also called three purchasers of cemetery plots who showed him checks made payable to Arlington which had been deposited in a second bank. That bank delivered to Sihner deposit slips showing that defendant had deposited these checks in his personal account.

When arrested and confronted with the foregoing information, defendant consented to a search of his personal records and, at the same time, a warrant was issued authorizing such a search. Shortly thereafter, the grand jury subpoenaed the relevant records of the two banks and the car leasing agency.

Defendant initially entered pleas of not guilty to all counts charged in the indictment. Prior to the trial date, defendant moved for a contin-

uance, which was denied. He then moved pursuant to section 1538.5 to suppress the documents obtained during the search of his own records and those obtained from the two banks and the leasing agency. The motion was denied and the plea bargain agreement was then arranged. According to its terms, defendant would plead guilty to one count of grand theft and one count of petty theft with a prior felony conviction. The remaining counts would be dismissed and the prosecutor would relinquish his right to make a recommendation to the judge regarding disposition, but would reserve the right to correct any factual errors in the presentence report.

The probation officer recommended in his report to the court that defendant be given a suspended sentence to state prison, be placed on probation, serve a year in the county jail, and be ordered to make restitution. Defendant was then referred to the Department of Corrections for diagnostic study pursuant to section 1203.03. Following that study, the department recommended that defendant receive a suspended sentence, make restitution, and be confined for a period of time in a local jail. When formally arraigned for sentencing, defendant moved to withdraw his plea of guilty on the ground that the prosecutor had breached the plea bargain by stating in a letter that was mailed to both the Department of Corrections and the court that the prosecutor believed defendant should not be granted probation. The court denied probation and sentenced defendant to the state prison for the term prescribed by law, the sentences for the two counts to run concurrently.

## ISSUES COGNIZABLE ON APPEAL

We must determine at the outset which, if any, of the issues raised are properly cognizable on appeal. Section 1237.5 provides that an appeal may be taken after a plea of guilty only if the defendant obtains from the trial court a certificate of probable cause.[3] Defendant here did not do so, and we must therefore determine whether the errors alleged come within recognized exceptions to the requirement of section 1237.5.

---

[3]Section 1237.5 provides: "No appeal shall be taken by defendant from a judgment of conviction upon a plea of guilty or nolo contendere, except where:

"(a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings; and

"(b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."

■ The search and seizure issues may obviously be raised on this appeal. It has been held that section 1538.5, subdivision (m), which provides that search and seizure issues may be raised on appeal after a plea of guilty, constitutes an exception to section 1237.5. (*People* v. *Rose* (1968) 267 Cal.App.2d 648 [73 Cal.Rptr. 349].) Rule 31(d) of the California Rules of Court now expressly recognizes this exception.[4]

■ We have also held that section 1237.5 does not apply where a defendant does not challenge the original validity of the plea but asserts that errors were committed in proceedings subsequent to the plea for the purpose of determining the penalty to be imposed. (*People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881]; *People* v. *Delles* (1968) 69 Cal.2d 906, 909 [73 Cal.Rptr. 389, 447 P.2d 629].) This exception is now also expressly recognized in rule 31(d). Because the alleged breach of the plea bargain by the prosecutor occurred after entry of the plea and because it pertains only to sentencing, this claim comes within this exception. (*In re Harrell* (1970) 2 Cal.3d 675, 705-706 [87 Cal.Rptr. 504, 470 P.2d 640]; *People* v. *Delles, supra,* 69 Cal.2d 906, 909.)

■ The alleged failure to warn defendant of the effect of a plea of guilty on his right of appeal and the refusal to grant a continuance, however, are clearly matters occurring before the entry of the plea and affecting the validity of the plea. We have previously rejected the proposition that denial of a motion to withdraw a plea of guilty may always be appealed without a certificate of probable cause because it always occurs after the entry of the plea. The determinative factor is when the claims upon which the motion was based arose and not when the motion to withdraw was denied. (*People* v. *Ribero* (1971) 4 Cal.3d 55, 63-64 [92 Cal.Rptr. 692, 480 P.2d 308].) Because no certificate of probable cause was obtained, these two issues may not be raised on this appeal.

■ Furthermore, the alleged error in the refusal to grant a continuance could not have been raised even if defendant had obtained a certificate of probable cause, because it was waived by the plea of guilty.

---

[4]Rule 31(d) provides in relevant part: "If the appeal from a judgment of conviction entered upon a plea of guilty or nolo contendere is based solely upon grounds (1) occurring after entry of such plea, which do not challenge the validity of the plea or (2) involving a search or seizure, the validity of which was contested pursuant to section 1538.5 of the Penal Code, the provisions of section 1237.5 of the Penal Code requiring a statement by the defendant and a certificate of probable cause by the trial court are inapplicable, but the appeal shall not be operative unless the notice of appeal states that it is based upon such grounds."

Other than search and seizure issues which are specifically made reviewable by section 1538.5, subdivision (m), all errors arising prior to entry of a guilty plea are waived, except those which question the jurisdiction or legality of the proceedings resulting in the plea. (See *People v. Ribero, supra,* 4 Cal.3d 55, 63 and cases cited therein.) Any error in the refusal to postpone the trial here clearly does not rise to such proportions.[5] Obtaining a certificate of probable cause does not make cognizable those issues which have been waived by a plea of guilty. (*People v. Massey* (1976) 59 Cal.App.3d 777 [130 Cal.Rptr. 581].) ■ As noted previously, section 1237.5 does not affect the grounds upon which appeal may be taken following a guilty plea; it merely establishes a procedure for screening out frivolous claims among these issues which have not been waived. (*People v. Ribero, supra,* 4 Cal.3d 55, 63; *In re Brown* (1973) 9 Cal.3d 679, 683 [108 Cal.Rptr. 801, 511 P.2d 1153].)

## EXCLUSION OF EVIDENCE

Defendant argues that the surrender of his bank records to law enforcement officers without his knowledge or consent constituted an unreasonable search and seizure. He relies upon *Burrows v. Superior Court, supra,* 13 Cal.3d 238, in which we held that a depositor has a reasonable expectation that his bank will maintain the confidentiality of records which originate with him, and that the bank's voluntary surrender of such records to the police without the aid of any legal process constitutes an illegal search and seizure. The defendant also claims that the information released by these banks led the prosecutor to the car leasing agency and that the information obtained there was likewise illegally seized. The People argue that this case is distinguishable from *Burrows* and that defendant had no expectation of privacy with respect to the account maintained at one bank because it was a trust and not a personal account and because the management of the trust was the subject of a pending lawsuit. The People also contend that any taint had been dissipated because the same information was secured independently by the search of defendant's records and by the grand jury subpoenas. ■ We need not determine the precise scope of *Burrows* nor whether any taint has been dissipated, because we conclude that

---

[5]Defendant argues that this claim was not waived because the refusal to postpone the trial denied him effective assistance of counsel, one of the errors not waived by a plea of guilty. (*People v. Natividad* (1963) 222 Cal.App.2d 438, 440-441 [35 Cal.Rptr. 237].) This argument is not persuasive, however, because defendant fails to suggest wherein the performance of his counsel was inadequate.

*Burrows* is applicable only to records seized after the date that decision became final.

■ Whether a judicial decision establishing new constitutional standards is to be given retroactive effect is customarily determined by weighing the following factors: "(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of retroactive application of the new standards." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; accord, *In re Johnson* (1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841].) "It is also clear that the factors of reliance and burden on the administration of justice are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered." (*In re Johnson, supra,* 3 Cal.3d 404, 410.) Decisions have generally been made fully retroactive only where the right vindicated is one which is essential to the integrity of the fact-finding process. On the other hand, retroactivity is not customarily required when the interest to be vindicated is one which is merely collateral to a fair determination of guilt or innocence. (*In re Johnson, supra,* 3 Cal.3d 404, 410-413 and cases cited therein.) *Burrows* clearly falls within the latter category. Exclusion is not necessary to ensure the reliability of the fact-finding process at trial. ■ No compulsion is present and the evidence seized is entirely trustworthy. As the purpose of the exclusionary rule in those circumstances is to deter illegal conduct by law enforcement officials, exclusion of evidence seized prior to the pronouncement of a decision does not further compliance with that decision.[6] (*Id.*)

---

[6]Defendant argues that the *Stovall* criteria are not applicable because *Burrows* did not establish any new legal principle. He relies upon *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262]. That case held that a householder maintains a reasonable expectation of privacy with respect to trash placed on the sidewalk for pickup. The People argued that the case was essentially an application of *People* v. *Edwards* (1969) 71 Cal.2d 1096 [80 Cal.Rptr. 633, 458 P.2d 713], in which the court had previously held that there was a reasonable expectation of privacy in trash barrels kept within the yard of a private residence. *Edwards* had been decided after the search in question was conducted, and the People argued that under the *Stovall* criteria *Edwards* should not be applied retroactively. The court concluded that the "reasonable expectation of privacy" test was not a new legal principle, and therefore the case presented no retroactivity problem. (*People* v. *Krivda, supra,* 5 Cal.3d 357, 365.)

We do not agree that any decision turning upon the "reasonable expectation of privacy" test must be applied retroactively because it does not establish new law. There is a vast array of possible circumstances in which a person may or may not have a reasonable expectation of privacy. These questions cannot be deemed to be settled merely because the general framework for evaluating them has been established. Moreover, we do not believe *Krivda* was based solely on that reasoning. That case did

## THE PLEA BARGAIN

The only evidence of the terms of the plea bargain agreement appears in a colloquy between the defense counsel, the prosecutor and the judge, which took place just before the guilty pleas were entered. That colloquy is set out in the margin.[7]

At the formal sentencing hearing, defense counsel noted that he and the prosecutor had met with the judge in chambers the day before and that the prosecutor had argued "at length, and I think fairly eloquently, that [defendant] ought to be sentenced to State Prison." No transcript was made of this conference. The district attorney, however, did not challenge this description of his statements. Rather, he defended his comments on the ground that the agreement prohibited him only from making a recommendation at the formal sentencing hearing. Defense counsel also noted that the prosecutor had written a six-page letter to the Department of Corrections strongly criticizing the probation officer's recommendation and that a copy of this letter had been sent to the court. Although the letter did not expressly recommend any particular disposition, the clear thrust of it was to urge the Department of Corrections to recommend that a prison sentence be imposed in its evaluation report to the trial judge. Defendant contends that these communications constitute a violation of the plea bargain agreement. We agree.

The argument made by the prosecutor in the judge's chambers for imposition of a prison sentence was indisputably a violation of the promise that "at the time of imposition and judgment of sentence the

---

not merely involve retroactive application of *Edwards.* There were important factual distinctions between the two cases. The court very properly looked to the reasoning of *Edwards,* yet such comparison does not constitute retroactive application in the true sense. However, to the extent that any language in *Krivda* does support the defendant's argument, it is disapproved.

[7]"DEFENSE ATTORNEY: . . . and with the final understanding that at the time of the imposition of judgment and sentence the People would give up their right to recommend or argue disposition of the case, reserving however unto themselves the right to call to the . . . Court's attention any factual inaccuracies . . . in any reports or studies or presentence reports.

"DISTRICT ATTORNEY: Just a clarification of the latter point. The People also reserve the right to present or assist the Probation Department, and under the 1202-1203.03 evaluation as to the factual basis of the case, since the case is very extensive, we can't just give the whole files to everybody, we have to assist them in some ways. And that's part of the understanding.

"THE COURT: Is that satisfactory?

"DEFENSE ATTORNEY: Sure."

People would give up their right to recommend or argue disposition of the case. . . ." The People contend that the agreement only prohibited the prosecutor from making a recommendation at the formal sentencing hearing. We are unable to discern any significant distinction between the discussion in chambers and the formal sentencing hearing in this context. The agreement was obviously intended to preclude the prosecutor from being heard in connection with the sentence to be imposed. Our review of the record establishes that his views were persuasively urged.

Furthermore, the agreement permitted the district attorney to intervene with the Department of Corrections only to assist it in evaluating the "factual basis of the case." In the last one-third of his letter, the district attorney argues that the probation officer's report did not give sufficient emphasis to the harm caused the victims of the fraud and urges the department to give more weight to this factor in making its recommendation.[8] It cannot reasonably be argued that these passages were intended merely to correct some demonstrable inaccuracy in the probation officer's report or even to contest a more general factual conclusion that the prosecutor felt was unfounded. The letter makes a

---

[8]The relevant portion of the district attorney's letter is as follows:

"In the evaluation portion of the probation report, Swenson concludes that although the defendant misused money that he was legally bound to place in a trust fund of the cemetery, his obsession to build a cemetery should excuse him from his conduct. At this point, it is crucial to realize that the probation report does not put into perspective the impact defendant's acts had on this community.

"III. IMPACT OF DEFENDANT'S CONDUCT ON THE COMMUNITY

"Most of defendant's victims are retired persons, trying to maintain themselves on their fixed incomes. They are the elderly, attempting to spare their children the pain and expense of securing cemetery plots for them at the time of their death. All have expressed great distress over the necessity of making other burial arrangements, because they simply cannot afford the additional financial burden. For example, Mrs. May, a woman in her seventies, came out of retirement to work in order to pay for her former husband's cemetery plot at Arlington. Now Arlington is over grown and closed, yet she is in such poor health that she can no longer work, and thus, cannot move her husband nor afford to buy a plot for herself in another cemetery. She did not even have the strength to climb the stairs to be interviewed by the investigators in this office.

"Kaanehe represented to the victims that the cemetery plots and services would be provided at the time of need, that the cemetery would be developed into a beautiful memorial park, and that the cemetery would be maintained through a care trust fund. Due to defendant's failure to deposit the required amounts into that trust fund, the cemetery fell into a state of extreme disrepair. Finally, as a result of its dismal financial state, the cemetery was forced to close operations. The closing of the cemetery brought severe hardship to over 500 plotowners. Suddenly they were without a place to bury their loved ones, and without the services that they were promised.

"There are a myriad of heartbreaking instances from the resultant closing of the cemetery and its lack of maintenance. It was a particularly disheartening experience for those persons who had loved ones already buried in Arlington. For example, Mr. and

purely subjective argument that the defendant's conduct should be punished severely. We are of the opinion that this violates the plea bargain agreement.

CONCLUSION

We now turn to the remedy to be afforded. The People argue that the trial court properly denied defendant's motion to withdraw his guilty plea and that this case is an appropriate occasion for "specific enforcement" of the plea bargain agreement. We do not agree.

■ Specific enforcement of a plea bargain agreement is actually a broad term covering several different types of relief. The remedy differs depending upon the nature of the breach and which party is seeking specific enforcement. When the breach is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain. When the breach is a refusal by the court to sentence in accord with the agreed upon recommendation, specific enforcement would entail an order directing the judge to resentence the defendant in accord with the agreement. The People as well as a defendant may seek such specific enforcements. The effect is to limit the remedy to an order directing fulfillment of the bargain. In such instances, the defendant is not allowed to withdraw his guilty plea. This is the type of specific enforcement the People seek here. They argue that defendant should merely be rearraigned for sentencing, that the prosecutor's letter be stricken from the record, and that the prosecution be ordered to comply with the agreement henceforth.

We have previously held that a defendant should not be entitled to enforce an agreement between himself and the prosecutor calling for a particular disposition against the trial court absent very special circumstances. The preferred remedy in that context is to permit a defendant to

---

Mrs. Fife buried their son, who was killed in a helicopter crash while serving in the armed services in Germany. They also bought plots at Arlington next to their son so that the family would rest together. However, due to the overgrowth of weeds and grass, the Fifes were unable to locate their son. They actually hacked and cut their way through the vegetation in their attempt to do so. The Fifes wish to move their son, but cannot afford the additional expense. They certainly will never be buried next to him.

"The above are only an insignificant few examples of over 300 complaints, received by this office and the State Attorney General's Office, and the over 500 victims who attended a recent plot owner's meeting called by both offices. The severe financial distress related by these victims is only a small part of over $1,000,000 involved in this case.

"Surely you will take the position of this office and Kaanehe's hundreds of victims into account in your evaluation and recommendation of sentence for this man."

withdraw his plea and to restore the proceedings to the original status quo. (*People* v. *Johnson* (1974) 10 Cal.3d 868, 873 [112 Cal.Rptr. 556, 519 P.2d 604].) *Johnson* is not controlling here, however. Specific enforcement of a particular agreed upon disposition must be strictly limited because it is not intended that a defendant and prosecutor be able to bind a trial court which is required to weigh the presentence report and exercise its customary sentencing discretion.[9] The remedy sought by the People here would not bind the trial judge and does not raise the same concerns.

Other factors, however, lead us to conclude that specific enforcement is inappropriate here. At least when there is a substantial possibility that this remedy will not completely repair the harm caused by the prosecutor's breach and when the breach was wilful and deliberate, a defendant should be permitted to withdraw his guilty plea. This case is the obverse of *People* v. *Newton* (1974) 42 Cal.App.3d 292 [116 Cal.Rptr. 690]. There the prosecutor had agreed to recommend that the defendant be committed to the California Rehabilitation Center (CRC). The defendant appeared for sentencing, however, before a different judge and a different district attorney and was represented by a different public defender. Commitment to the CRC was never discussed and defendant was sentenced to prison. The court held that it was sufficient in those circumstances merely to grant the defendant a new sentencing hearing and give the prosecutor an opportunity to make the agreed upon recommendation.[10] The court noted that such remedy was unusual but emphasized the fact that the breach was wholly inadvertent. In addition, there was every reason to believe that the defendant enjoyed the same opportunity to receive the recommended commitment to CRC at the second hearing as he would have had at the first proceeding. In the present case, however, there is a substantial possibility that setting aside the sentence would not fully undo the harm caused by the prosecutor's breach. Although the recommendation by the Department of Corrections was favorable to the defendant, it is quite possible it would have been even more favorable but for the prosecutor's letter. We are of the view that it would be inappropriate to require defendant to undergo a second evaluation pursuant to section 1203.03 to cure any effect the prosecutor's letter may have had on the first evaluation. Because the

[9]Of course, if the judge imposes a greater sentence than that called for in the agreement, a defendant is entitled to withdraw his guilty plea. (§ 1192.5.)

[10]The court stated that the defendant would be permitted to withdraw his guilty plea if the prosecutor repudiated the bargain at the second hearing.

breach was so glaring, the defendant must be given an option of (1) rearraignment for sentencing with the prosecutor's letter stricken from the record, or (2) the right to withdraw his pleas of guilty upon condition that all charges dismissed pursuant to the bargain be restored and trial proceedings resumed. (See *Santobello* v. *New York* (1971) 404 U.S. 257, 267, 268-269 [30 L.Ed.2d 427, 436-437, 92 S.Ct. 495] (conc. and conc. and diss. opns.).) Further proceedings should, of course, be had before a judge other than the judge who presided over the instant proceedings. We do not deem it likely that any judge, however objective and disciplined he may be, can wholly remove from consideration in resentencing defendant the matters improperly communicated to him by the prosecutor.

Because of the foregoing disposition, we need not consider defendant's other contentions.

The cause is remanded to the trial court with instructions that the sentences be vacated and the court proceed in the manner provided herein.

Tobriner, Acting C. J., Mosk, J., Clark, J., Richardson, J., and Sullivan, J.,* concurred.

On March 17, 1977, the opinion was modified to read as printed above.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.