[Crim. No. 5896. Fifth Dist. Dec. 2, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS L. RUTLEDGE, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Charles M. Bonneau, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller and Lisa Lewis Dubois, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**QUALL, J.\*—**

### STATEMENT OF THE CASE

On July 21, 1981, an information was filed in the Fresno County Superior Court charging appellant with one count of robbery in violation of Penal Code section 211 (count one) and two counts of assault with a deadly weapon in

---

*Assigned by the Chairperson of the Judicial Council.

violation of Penal Code section 245, subdivision (a) (counts two and three). All three counts alleged appellant personally used a firearm within the meaning of Penal Code section 12022.5.

Appellant was arraigned on July 28, 1981, and entered a plea of not guilty to the charges.

On September 2, 1981, an amended information was filed adding 11 counts of false imprisonment in violation of Penal Code section 236.

Appellant was arraigned on September 4, 1981, before the Honorable A. Dennis Caeton. The first amended information was withdrawn. Appellant entered a plea of guilty to counts one, two and three and admitted the firearm use allegation. On the People's motion, counts four through fourteen were dismissed.

Appellant was sentenced October 5, 1981, before the Honorable Robert Z. Mardikian.

### STATEMENT OF FACTS[1]

On the morning of December 13, 1980, Walter Lock went to work at the Phoenix West restaurant which he co-owned with Henning Chin. Around 9 a.m., appellant and an accomplice entered the restaurant and told Lock, "This is a holdup." Appellant was holding a shotgun and his accomplice was armed with a .22-caliber revolver.

Appellant told Lock they were not going to hurt anyone and just wanted the money located in the safe. Lock told appellant he could not open the safe, and they would have to wait for Chin. Lock and the janitor, Lam Wong, were locked in a small liquor room.

Throughout the morning, other people arrived at the restaurant and were placed in the liquor room. These people were Art Aragon, Mark Semper, Edward Blankenship, Rachel Blankenship, Jesse Hernandez, Binh Giang, Sik King Lee, Hing June Heel, Juan Hernandez, Stan Cole and Linda Cole.

Chin arrived at the restaurant at approximately 12:30 p.m. He was confronted by the two robbers and was told to open the safe. While doing so, appellant took a diamond ring from Chin's finger, valued at $2,800. (Appellant maintained his confederate took the ring.) Chin opened the safe, and appellant took approximately $5,000 in bills and coins. He also took Chin's car keys.

---

[1]The facts are taken from the probation report.

As the robbers left, they forced the victims into the liquor room and secured the door with a piece of rope. Leaving by the front door, they met Martin Brown. They told Brown to leave, then took his car and fled the scene. The automobile was found abandoned the next day.

Appellant's fingerprints were developed from a mask left at the scene and from the interior of Brown's auto. He was arrested on June 23, 1981, while in custody for other charges.

PLEA AND SENTENCING HEARINGS

The hearing in which appellant pleaded guilty to counts one through three and admitted the firearm use allegation was held on September 4, 1981, before the Honorable A. Dennis Caeton. After appellant was advised of and waived his constitutional rights, the following exchange took place:

"THE COURT: Has anybody made any promises or representations to you to get you to plead guilty which haven't been stated on the record?

"MR. SARKISIAN: I should add this, Your Honor, that I believe that just one final point is that the People will stand moot [*sic*] on the point as to whether or not the counts should be, counts two and three should run concurrently or consecutively.

"THE COURT: All right.

"MR. SARKISIAN: Is that correct, counsel?

"MR. DUFFY: That is a correct statement, Your Honor. The People would abide by the recommendation of the Probation Department.

"THE COURT: All right. By abiding you mean you support it?

"MR. DUFFY: Yes, Your Honor.

"THE COURT: All right. And so that may not be, that is not the same thing as standing moot [*sic*].

"MR. SARKISIAN: Apparently not.

"THE COURT: So is there an agreement here or not?

"MR. DUFFY: Your Honor, my discussions with Mr. Sarkisian I indicated to him that the People would not be making a recommendation either for con-

secutive or for concurrent sentence in regards to Mr. Rutledge and in effect would not be making any statement in regards to his sentence.

"THE COURT: Okay. So you will be standing moot [*sic*], then?

"MR. DUFFY: That is correct." The remaining counts were dismissed.

The probation department recommended imposition of the upper term for the robbery count plus two years for the firearm use, and recommended consecutive sentences for the assault charges.

Appellant was sentenced on October 5, 1981, before the Honorable Robert Z. Mardikian. Appellant's attorney addressed the probation report by stating appellant appeared to be a definite alcoholic. The circumstances of the crime showed it was not sophisticated or well planned, and appellant's attorney argued the midterm should be imposed. The district attorney spoke to the arguments made by appellant's attorney: "MR. DUFFY: Your Honor, the only comments I can make basically are two. In defense of Mr. Rutledge's position I contacted seven of the victims that were alleged in this case and all of the seven I had talked to indicated Mr. Rutledge was a rather courteous robber as it were. Although, on the other hand, we have involved in this case the use of a rather dangerous or probably the most dangerous of all weapons on the street today.

"Secondly, I sometimes wonder in arguing a case whether the terminology this was not a sophisticated robbery or sophisticated crime in any way, shape or form has any bearing other than the fact that if it is not sophisticated I believe if anything it would increase the consequences or increase the danger to the victims. We generally find in going through the courts that a professional robber or burglar, as it will, will either not carry a dangerous or deadly weapon or be concerned for the safety of the victims that they are perpetrating a crime on. I find the unsophisticated criminal as it were would have a tendancy [*sic*] probably to panic more than the sophisticated criminal and therefore result in either some serious bodily harm or potential for death.

"I don't want to minimize the—certainly the occurrence that Mr. Rutledge was involved in and especially the numerous people involved, and basically in talking to the victims that's all I can offer to the Court. The People still consider this a very serious offense and we would submit it on the report and recommendation of the Probation Department."

There is nothing in the record to indicate Judge Mardikian was aware of the agreement between the attorneys. In addition, appellant did not object to the district attorney's comments. It is to be noted the public defender at the plea hearing was Edward Sarkisian. At the sentencing hearing, the public defender was Kenneth Carrington. The same district attorney was present at both hearings, John Duffy.

## CONCLUSION

■ For the reasons stated below we find that appellant's plea agreement was violated by the prosecution and he is entitled to specific performance of the plea agreement, or in the alternative, a withdrawal of his guilty plea at his option.

## DISCUSSION

*I. Appellant may withdraw his plea after a violation of a plea agreement where he is not represented by the same attorney at the sentencing hearing as represented him at the entry of the plea, and appellant was not advised of his right to withdraw his plea.*

Appellant contends in this case that the judgment must be reversed and he must be permitted to withdraw his plea or be entitled to specific performance of the plea because of the district attorney's comments at sentencing.

Appellant relies upon Penal Code section 1192.5;[2] *People* v. *Johnson* (1974) 10 Cal.3d 868 [112 Cal.Rptr. 556, 519 P.2d 604]; *People* v. *Preciado* (1978) 78 Cal.App.3d 144 [144 Cal.Rptr. 102]; and *People* v. *Morris* (1979) 97 Cal.App.3d 358 [158 Cal.Rptr. 722].

Penal Code section 1192.5, however, is directed to the court's action regarding plea agreements. In the present case, the judge was not aware of the prosecutor's agreement and therefore had no reason to exercise any approval rights pursuant to Penal Code section 1192.5. Because the alleged breach of the agreement was perpetuated by the prosecution instead of the court, the statutory directive of Penal Code section 1192.5 is not applicable.

The appellant must move under Penal Code section 1018[3] to withdraw his plea.

---

[2]Penal Code section 1192.5 reads in part: "If the court approves of the [bargained for] plea, it shall inform the defendant prior to the making of the plea that (1) its approval is not binding, (2) it may, at the time set for the hearing on the application for probation or pronouncement of judgment, withdraw its approval in the light of further consideration of the matter, and (3) in such case, the defendant shall be permitted to withdraw his plea if he desires to do so. The court shall also cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for such plea.

"If such plea is not accepted by the prosecuting attorney and approved by the court, the plea shall be deemed withdrawn and the defendant may then enter such plea or pleas as would otherwise have been available."

[3]Penal Code section 1018 reads as follows: "Unless otherwise provided by law every plea must be entered or withdrawn by the defendant himself in open court. No plea of guilty of a felony for which the maximum punishment is death, or life imprisonment without the possibility

Whether or not appellant may now move to set aside the plea should be decided by looking at this court's ruling in *People* v. *Newton* (1974) 42 Cal.App.3d 292 [116 Cal.Rptr. 690].

In *People* v. *Newton, supra,* the defendant, a deputy public defender and a deputy district attorney appeared before the judge indicating the defendant would plead guilty and the district attorney would recommend California Rehabilitation Center.

Approximately two and one-half weeks later the defendant, a different public defender and a different district attorney appeared before a different judge. No comments were made by the district attorney regarding sentencing and the defendant was sentenced to state prison.

On appeal, the defendant argued a violation of the plea agreement. Justice Gargano, in reversing the judgment, ruled, inter alia: "Second, this is not a case where a public official deliberately repudiated a promise made as a part of a plea bargain. On the contrary, it is apparent that the district attorney's commitment was not kept because the plea was taken by one judge, and appellant not only was sentenced by another judge, but a different deputy public defender and a different district attorney were present at the sentencing proceeding. It cannot be said that the cases which articulate the 'waiver' rule upon which the Attorney General relies are directly in point. For all the record shows, appellant, a layman, may not even have known that the district attorney's commitment was not kept." (*Id.,* at p. 298.)

The only factual difference between the instant case and *Newton* is that the district attorney was the same; this distinction is irrelevant because he was the one who allegedly breached the agreement. Appellant has not waived his right to argue this issue on appeal.

II. *The district attorney's comments at sentencing violated the plea agreement.*

Respondent argues that the "agreement" did not and was never intended to preclude the prosecutor from making a recommendation in connection with the

of parole, shall be received from a defendant who does not appear with counsel, nor shall any such plea be received without the consent of the defendant's counsel. No plea of guilty of a felony for which the maximum punishment is not death or life imprisonment without the possibility of parole shall be accepted from any defendant who does not appear with counsel unless the court shall first fully inform him of his right to counsel and unless the court shall find that the defendant understands his right to counsel and freely waives it and then, only if the defendant has expressly stated in open court, to the court, that he does not wish to be represented by counsel. On application of the defendant at any time before judgment the court may, and in case of a defendant who appeared without counsel at the time of the plea the court must, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. Upon indictment or information against a corporation a plea of guilty may be put in by counsel. This section shall be liberally construed to effect these objects and to promote justice."

term to be imposed for the robbery conviction. Respondent urges that a review of the record indicates that the People would "stand moot" only on this issue of whether consecutive or concurrent sentences should be imposed on the assault with a deadly weapon conviction.

However, where a district attorney has, on the record, accepted a plea bargain and it has been approved by the court, both the prosecution and the defendant are entitled to the benefits for which they have bargained. (*People v. Collins* (1978) 21 Cal.3d 208, 214 [145 Cal.Rptr. 686, 577 P.2d 1026].)

In *People v. Kaanehe* (1977) 19 Cal.3d 1 [136 Cal.Rptr. 409, 559 P.2d 1028], when the prosecution breached an agreement with the defendant, the court because of possible irreparable harm to the defendant allowed the defendant to either (1) be rearraigned for resentencing in accordance with the agreement, or (2) withdraw his plea of guilty and proceed to trial.

We now turn to the facts in this case to determine whether or not in fact the comments of the prosecutor at sentencing were a breach of the original "agreement."

The district attorney's comments did violate the plea agreement. Although arguably the agreement merely provided the People would stand mute as to whether counts two and three were to be concurrent or consecutive, the district attorney also stated at the plea hearing: "Your Honor, my discussions with Mr. Sarkisian I indicated to him that the People would not be making a recommendation either for consecutive or for concurrent sentence in regards to Mr. Rutledge *and in effect would not be making any statement in regards to his sentence."* (Italics added.)

Further, as appellant points out, the district attorney also argued at the sentencing hearing that appellant used a dangerous weapon, numerous people were involved, and the district attorney considered the crime to be a serious offense. After so stating, he submitted it on the report and recommendation of the probation department. Although these factors could relate to circumstances in aggravation of the robbery only (Cal. Rules of Court, rule 421), they are just as applicable to criteria affecting concurrent or consecutive sentences (Cal. Rules of Court, rule 425). Immediately after making these statements, the district attorney submitted the sentencing on the report and recommendation of the probation department, its recommendation being consecutive sentences. The obvious implication of these statements was to, in effect, recommend consecutive sentences, and thus, the prosecutor breached the plea agreement.

In the present case the defendant's legal right hand did not know what the legal left hand was doing.[4] Before a different judge the deputy district attorney intentionally or inadvertently breached his previous promise to remain mute. We hold that appellant must be allowed to specific performance of the agreement or be permitted to withdraw his plea.

Because of this holding we do not reach appellant's contentions that there was error under *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]. Likewise, error in imposing consecutive sentences, while conceded by respondent, is not addressed.

The judgment is reversed. The trial court shall rearraign appellant in accordance with our instructions. Appellant is entitled to specific performance of the plea agreement, or in the alternative, a withdrawal of his guilty plea, at his option.

Franson, Acting P. J., and Zenovich, J., concurred.

---

[4]It is not unusual for defendants to be represented by different public defenders during different stages of criminal proceedings. It appears from the transcript of the proceedings that the public defender at the time of sentencing was not aware of the "agreement" entered into by his client with the prosecution.