Filed 4/27/16  P. v. Thoreson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>STEVEN A. THORESON,<br><br>        Defendant and Appellant. | A146644<br><br>(Sonoma County<br>Super. Ct. No. MCR-430610) |

Appellant Steven A. Thoreson appeals from a written order denying his "Motion for Clarification" which pertains to his sentence and corresponding custody credits.  His assigned counsel has filed a brief raising no issues and asking this court to independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436.  Counsel advised appellant she intended to file such a brief, and that appellant could file a supplemental brief in his own behalf, and appellant has filed such a brief.  Because this appeal followed a guilty plea and is based on matters after the plea which do not challenge the validity of the plea, it is proper under rule 8.304(b)(4)(B) of the California Rules of Court.

**FACTUAL AND PROCEDURAL BACKGROUND**

Many of the facts we shall recite are taken from our unpublished opinion in *People v. Thoreson* (Aug. 10, 2007, A114406) (*Thoreson*), an earlier appeal from a judgment entered against appellant after he pled guilty and admitted violating probation.  We affirmed that judgment after rejecting appellant's claims that (1) his July 8, 2004 prospective waiver of custody credits was not knowing, voluntary and intelligent, (2) the waiver was imposed by the court as a routine matter in violation of *People v. Penoli*

1

(1996) 46 Cal.App.4th 298, and (3) an April 20, 2005 waiver of custody credits did not apply to credits he received in a residential treatment program.

The facts pertinent to appellant's earlier appeal, which are also germane to this appeal, were as follows: Defendant had pled guilty to one count of substantial sexual conduct with a child under the age of 14. (Pen. Code, § 288.5, subd. (a).)[1] On March 25, 2004, he was sentenced to five years of supervised probation, with the condition that he serve one year in the county jail and participate in a residential drug rehabilitation program. At the time of his sentencing, he had accumulated 201 days of custody credit against the required year of incarceration.

On July 8, 2004, appellant appeared at a hearing requested by the Sonoma County Probation Department. At that hearing, appellant's probation officer informed the court that a place had opened up for him at a residential treatment program called Pate House. The following is the discussion of waiving the custody credits he had accrued up to that point:

"The Court: Very well. It appears—Let's see. He's been in for quite a while, hasn't he?

"The Probation Officer: Yes, he has.

"The Court: All right. Are you prepared to waive any custodial credits while you're in residential treatment?

"The Defendant: Yes.

"The Court: All right. Do you need to discuss that with your attorney?

"[Public Defender]: I'm assuming he already did that.

"The Court: Well, let's reaffirm it, then.

"[Public Defender]: Okay

"The Court: You get custodial credits up to and including Monday, when you will be released to a representative of the Pate House for residential treatment. [¶] You understand that?

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

"The Defendant:  Yes.

"The Court:  And while you're in residential treatment, you receive no custodial credits, correct?

"The Defendant:  Uh-huh (affirmative).

"The Court:  All right.

"[Public Defender]:  Thank you.

"The Court:  Very well.  He will then be released on Monday, the 12th of July, to a representative of Pate Recovery Home, Inc., for housing and treatment there."

About three months later, on September 30, 2004, appellant admitted drinking alcohol in violation of a condition of probation.  On April 20, 2005, after having been referred to the Department of Corrections for a 90-day diagnostic study (§ 1203.03), appellant appeared at a sentencing hearing.

At the hearing, the court stated that it would permit appellant to enter a second treatment program at Redwood Gospel Mission.  The People stated, "if . . . defendant is going to be given the privilege of a second chance, I would ask that he waive all of his credits, current credits."  The People also pointed out that due to the severity of appellant's conduct, his numerous prior convictions for molestation, the court consider imposing the upper term.  The court stated that it agreed, but was limited by the previous plea agreement.  The People responded, "with that, then, I would even more strenuously ask that there be a waiver of all credits."  The court agreed, stating:  "I think there should be a waiver."  Counsel for appellant agreed that this would not be an issue.  As earlier noted, our earlier opinion in *Thoreson* rejected appellant's several challenges to the validity and scope of his waivers, and the present appeal does not directly address that issue.

The probation officer informed the court that appellant had accrued 704 days of credit.  Of that total, there were 470 days of "actual" credit, and 234 days of good conduct credit.  The probation officer also stated that "[h]e would get zero days credit for the treatment program due to the waiver on September 7th for a total of 704."  The court then told appellant, "those are credits toward any future state prison commitment.  In

3

other words, it's like they never happened.  If you violate your probation and this court or another court sentences you to state prison, you wouldn't get any of these credits that you accrued.  That's over a couple years.  Is that what you want to do?"  Appellant replied, "Yes, ma'am."  A week later, on April 27, 2005, Appellant entered Redwood Gospel Mission.

In January 2006, appellant was terminated from the Redwood Gospel Mission program, based on an allegation (which he strenuously disputed) that he had stolen from other residents in the program.

On January 11, appellant was placed in custody.  His probation was summarily revoked the next day.  At a hearing on February 16, 2006, appellant admitted to violating his probation.  On April 24, 2006, the court executed the previously suspended sentence of 12 years.  Appellant was granted 119 days of custody credits against this sentence, none of which included any of the time he had previously waived.

In June 2009, appellant's ex parte letter request for pre-prison custody credits from November 12, 2003, through May 3, 2006, was denied by Sonoma County Superior Court Judge Raima H. Ballinger, in a written order stating that "[w]aivers for custody credits while in residential treatment programs were waived on July 8, 2004, and April 20, 2005," and that "credit for actual time served (104 actual plus 15 conduct) were credited toward the current prison time now being served."

On April 30, 2012, appellant raised the issue of custody credits again by filing a petition for habeas corpus in the Sonoma County Superior Court.  The claim this time was that amendments to section 4019 should apply to him retroactively.  The petition was denied on May 9, 2012, by Judge Dana B. Simonds.  A similar writ petition filed in this court was denied on May 29, 2012.  Appellant then commenced considerable correspondence with the superior court regarding various aspects of his sentence he

4

believed erroneously denied him release from prison under sentencing statutes and/or the terms of his plea agreement.[2]

Finally, on September 18, 2015, acting in propria persona, appellant filed a "Motion for Clarification of Sentence" in the superior court. The motion commences with the statements that on December 18, 2003, he pled guilty to violation of section 288.5 in return for a term not to exceed 12 years, and was found eligible for probation," and that on December 18, 2015, he "maxed out his time in custody including time spent in a rehabilitation center" and "should have his parole requirement discharged at that time." The motion then states that the "question" that "needs clarification" is "if a plea agreement was entered by the district attorney's office rather than sentencing under a 'one strike,' 'three strike' or habitual sex offender statute as listed under . . . section 1192.7(a)(1), would that also not affect petitioner's custody credit of 85 percent as listed in section 2933.1 and violent offender status on parole?"[3]

---

[2] In a letter dated February 4, 2015, Judge Chouteau told appellant: "The Sonoma County Superior Court is unable to assist you in your request for correction of sentencing errors. I have reviewed your file in detail including the *Tahl* waiver which you executed, the transcript of your plea, the transcript of your sentencing, the multiple appellate decisions, and the petitions for writ of habeas corpus which you have filed. Your interpretation of the plea transcript is incorrect. Mr. McBride clearly indicated that the sentencing triad for . . . section 288.5 is 6-12-16, and the *Tahl* waiver which you signed, clearly indicated both the maximum sentence of 16 years and an agreement pursuant to . . . section 1192.5, that you would receive a sentence of no more than 12 years if you were sent to prison. [¶] Although you were initially placed on probation, you violated probation twice. After the first violation the court sentenced you to the mid-term of 12 years and suspended execution of sentence on April 20, 2005. You once again violated probation and on April 24, 2006, the court executed the suspended sentence. There does not appear to be any error in your sentencing."

[3] Subdivision (a)(1) of section 1192.7 states in its entirety as follows: "It is the intent of the Legislature that district attorneys prosecute violent sex crimes under statutes that provide sentencing under a 'one strike,' 'three strikes' or habitual sex offender statute instead of engaging in plea bargaining over those offenses." As we later explain, section 2933.1 limits custody credits that may be awarded certain serious offenders to "not more than 15 percent of worktime credit" as defined in the statute. In effect, appellant contends he is erroneously being subjected to the 15 percent limitation. The last paragraph of appellant's motion also states that in August 2015, he was notified by

5

On September 28, 2015, Sonoma County Superior Court Judge Rene Chouteau denied appellant's motion for clarification on the ground that "There is no ambiguity as to defendant's sentence." This is so, the order explains, because "[t]he record is clear that on April 24, 2006, defendant was sentenced to 12 years state prison based on his admission to a violation of probation, which had been granted based on a plea of guilty to a violation of <u>Penal Code section 288.5</u>, entered on December 18, 2003."[4] (Underscoring in original.)

Appellant's October 16, 2015 notice of appeal from this order was timely.

## DISCUSSION

The general statute governing credit for presentence custody, section 4019, provides that "[a]bsent contrary authority 'a defendant receives what are commonly known as conduct credits toward his term of imprisonment for good behavior and willingness to work during time served prior to commencement of sentence. [Citations].' " (*People v. Philpot* (2004) 122 Cal.App.4th 893, 907.) Section 4019 provides, among other things, that "[w]hen a prisoner is confined in a county jail . . . following arrest and prior to the imposition of sentence for a felony conviction" (§ 4019, subd. (a)(4)), then "for each six-day period in which a prisoner is confined in . . . a facility as specified in this section, one day shall be deducted from his or her period of confinement unless . . . the prisoner has refused to satisfactorily perform labor as assigned . . . ," and an additional "day shall be deducted . . . unless . . . the prisoner has

---

his correctional counselor that "I will have five years parole requirement even after I max-out the 12 year in custody." Appellant asks the court, "Will I be placed on violent sex offender parole after maxing out my 12 year plea agreement?"

[4] Section 288.5, which defines the offense of continuous sexual abuse of a child, defines such an offender as one who "resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . or three or more acts of lewd or lascivious conduct . . . ." For commission of this offense the statute prescribes a state prison sentence of 6, 12, or 16 years.

6

not satisfactorily complied with the reasonable rules and regulations" applicable to the facility.  (§ 4019, subds. (c) & (d).)

Section 2933.1, subdivision (c), operates as an exception to section 4019.  As pertinent, it provides that "[n]otwithstanding section 4019 or any other provision of law, the maximum credit that may be earned against a period in confinement in, or commitment to, a county jail . . . following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)."  The persons subject to the 15 percent limitation imposed by section 2933.1 include "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 . . . ."  (§ 2933.1, subd. (a).)

The offenses specified in subdivision (c) of section 667.5, include "[c]ontinuous sexual abuse of a child, in violation of section 288.5."  (§ 667.5, subd. (c)(16).)

As Judge Chouteau emphasized in his order, appellant was convicted of that offense.  He is therefore subject to the 15 percent limitation on custody credit imposed by section 2933.1.  Appellant's reliance on section 1192.7, subdivision (a)(1) is unavailing, as nothing in that or any other statute, or the cases he cites, support his suggestion that, because he was convicted on the basis of a plea bargain, he cannot be subject to sentencing and/or parole pursuant to the habitual sex offender statute.  Appellant's contention that he is being held in excess of his 12-year sentence is apparently predicated on the assumptions that he is not subject to the 15 percent limitation and that he is entitled to the custody credits he earned for the time he spent in residential treatment.  Both assumptions are false.

As we ruled in appellant's earlier appeal, he is not entitled to credit for any of the time he spent in residential treatment programs due to his waivers of such credit.

Appellant's supplemental brief takes the position that "imposition of the maximum term of 12 years violates the terms of the plea," because "the district attorney promised not to seek more than the midterm of six years as stipulated pursuant to [section] 1192.5." (Citing, *People v. Buttram* (2003) 30 Cal.4th 773.)  Appellant's reference to the district attorney's promise of the six-year midterm, which is not based on any citation to the

7

record before us, is unclear. The citation of *Buttram,* may indicate appellant's belief that his plea was based on a maximum sentence which left unresolved the appropriate sentence within that maximum, leaving that issue to the normal sentencing discretion of the trial court in a separate proceeding, which would be analogous to the situation in *Buttram*. In any case, appellant does not explain, and we do not understand, the relevance of the assertedly promised six-year midterm. As earlier noted, in his letter to appellant of February 4, 2015, Judge Chouteau explained that appellant had misinterpreted the transcript of the proceedings at which he entered his last guilty plea. As Judge Chouteau stated, the transcript "clearly indicated that the sentencing triad for [section] 388.5 is 6-12-16, and the *Tahl* waiver which you signed, clearly indicated both the maximum sentence of 16 years and an agreement pursuant to [section] 1192.5, that you would receive a sentence of no more than 12 years if you were sent to prison." To the extent denial of appellant's motion for clarification indicates that imposition of the maximum term of 12 years does not violate the terms of appellant's plea agreement, the order is correct.

Appellant's supplemental brief also seeks clarification "on a *Johnson* waiver that was engrafted onto the plea after entry of that plea pursuant to *People v. Hebert* (2007) 156 Cal.App.4th 1114." The *Hebert* opinion appellant cites is not valid authority, as it was vacated by a grant of rehearing. We assume the unexplained reference to a "*Johnson* waiver" refers to a waiver of the right announced in *People v. Johnson* (1974) 10 Cal.3d 868,[5] which after the opinion in *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*), is now more commonly referred to as a "*Cruz* waiver." In *Cruz*, the defendant pleaded guilty in return for a grant of five years probation and a county jail term of one year or, at the

---

[5] In *Johnson*, after discovering that in negotiating a plea bargain regarding a misdemeanor the defendant had concealed his true name and past criminal record, the court withdrew its prior approval of the bargain and sentenced the defendant to state prison, without informing him of his right under section 1192.5 to withdraw his plea. The Supreme Court reversed, with directions that the defendant be advised of his rights under section 1192.5, and permitted to withdraw his plea and enter a new plea. *Johnson* holds that a defendant does not waive his right to change his plea by failing to request a change of plea after learning of the court's withdrawal of its prior approval.

8

defendant's option, a state prison term of 16 months and no probation. After the defendant failed to appear at sentencing, the trial court disapproved the plea bargain, denied the defendant's motion to withdraw his guilty plea, and sentenced him to two years in state prison. The Supreme Court reversed the decision of the Court of Appeal and remanded the case with directions to permit the defendant to withdraw his guilty plea, because the resulting sentence exceeded the bargained for term and was a separately chargeable offense. *Cruz* holds that, pursuant to section 1192.5, a defendant who pleads guilty pursuant to a plea bargain that is subsequently disapproved by the trial court for the defendant's failure to appear is nevertheless entitled to withdraw his or her plea.

We are at a complete loss to understand the relevance to this case of a "*Johnson*" or "*Cruz*" waiver, as the trial court in this case did not disapprove appellant's plea bargain, the sentence he received was based on the plea bargain, and he does not seek to withdraw his plea. Nor do we have any idea why appellant relies on the opinion in *People v. Hebert, supra,* 156 Cal.App.4th 1114. Indeed, appellant asks us "*not* to vacate the plea per [section] 1192.5, but rather *enforce* the original terms of the plea." (Italics added.) In support of this request appellant relies on *People v. Kaanehe* (1977) 19 Cal.3d 1 and *Santobello v. New York* (1971) 404 U.S. 257, 261-262, but we cannot discern the relevance to this case of either opinion.[6]

Neither the trial court's denial of appellant's motion to clarify, nor anything else disclosed by our careful review of the record, presents an arguable issue warranting further briefing.

Accordingly, the September 28, 20015 order is affirmed.

---

[6] In both *Kaanehe* and *Santobello* the district attorney violated or failed to keep a commitment regarding the sentence on a negotiated guilty plea, a crucial fact not present in this case.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Miller, J.


_People v. Thoreson_ (A146644)

10