[No. 13649. Third Dist. May 31, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
LEROY HASKINS, Defendant and Appellant.

## COUNSEL

Howard M. Hoffman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Gary A. Binkerd, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—This case lends credence to President Lincoln's remark that you can't fool all of the people all of the time.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 1983, two California Highway Patrol officers stopped defendant's vehicle for a traffic violation and found six bindles of cocaine in the car and over $1,200 in cash on defendant. After a struggle with the officers, he was arrested.

At booking, defendant identified himself as Leroy Haskins. He also had a vehicle registration certificate in that name. However, his driver's license, which had his photo on it, was in the name of Bobby Gregory. He was booked as Bobby Gregory aka Leroy Haskins.

On September 7, 1983, a complaint was filed in Sacramento Municipal Court charging Bobby Carl Gregory with possession of cocaine for sale (Health & Saf. Code, § 11351) and battery on a police officer (Pen. Code, §§ 242, 243).

On October 19, 1983, defendant appeared in Sacramento Municipal Court. There, the following colloquy occurred:

"THE COURT: People vs. Bobby Carl Gregory. Counsel, what is the—Bobby Carl Gregory, is that your name?

"DEFENDANT: Bobby *Earl* Gregory.

"THE COURT: Bobby Earl, okay." (Italics added.)

The judge then diligently changed the "C" in Carl to an "E" for Earl on the face of the complaint.

Bobby Earl then waived preliminary hearing and pled guilty to the lesser included offense of possession of cocaine (Health & Saf. Code, § 11530) on the conditions that he would not be sentenced to state prison at the outset and the charge of battery on a police officer would be dismissed. At the hearing, the district attorney stated one reason for the plea bargain was, "The defendant has no criminal record, other than traffic violations." The court then asked Bobby Earl whether he understood "what these attorneys have said," and defendant stated he did. Bobby Earl's case was then certified to superior court and referred to the probation department for a presentence report.

On October 24, 1983, Bobby Earl was interviewed by Deputy Probation Officer Janice Kurokawa. Bobby Earl denied he had ever used an alias and that he had any juvenile or adult criminal record.

According to Ms. Kurokawa's probation report of November 17, 1983, Bobby Earl, then 41 years old, grew up in Cincinnati, Ohio, where he graduated from Douglas High School in 1959. He had "an uneventful but fulfilling childhood" and was active in sports. He was honorably discharged from the Air Force, attended classes at colleges in Sacramento, and was 23 units short of obtaining his bachelor of arts degree. Bobby Earl had never been married and had no children. He had a misdemeanor assault and battery conviction at age 21 and a drunk driving offense in 1973. The report recommended probation with a "moderate period of incarceration." "In that the defendant has no substantial experience with incarceration," the report concluded, "a long term period of incarceration or imprisonment could be traumatic for him."

On November 17, 1983, defendant appeared for sentencing in superior court before Judge Ronald W. Tochterman. Judge Tochterman asked defendant, "Is your true name Bobby Earl Gregory, sir?" and defendant replied, "Yes, it is."

Judge Tochterman suspended imposition of judgment and sentence and placed Bobby Earl on probation for three years. One condition was that he serve 180 days in county jail, commencing November 21, 1983.

Bobby Earl began serving his county jail time.

On January 30, 1984, Deputy Probation Officer Kurokawa wrote a memorandum to Judge Tochterman with copies to counsel. She reported she had submitted defendant's thumbprint to the California Bureau of Criminal Identification and Investigation (CII). CII had reported to her the thumbprint did not match the print on file for Bobby Earl Gregory. Confronted with this information, defendant admitted he was Leroy Haskins. A full set of defendant's prints was submitted to the FBI.

The court, apparently on its own motion, issued an order to show cause why the order of probation should not be vacated and defendant resentenced. A hearing, at which defendant testified, was held February 27, 1984. At the outset of that hearing, defendant admitted his true name was Leroy Haskins.

At the hearing, Judge Tochterman stated he had read and considered a supplemental probation report prepared by Ms. Kurokawa. The report indicated Leroy Haskins was not the same person as Bobby Earl Gregory.

Thus, for example, the supplemental report showed that Leroy Haskins had grown up not in Ohio but rather in Maryland (undoubtedly to the relief of Buckeyes everywhere).

Leroy had graduated from Dunbar Senior High School, not Douglas High School (undoubtedly to the relief of all graduates of Douglas High School, if any such exists).

Unlike Bobby Earl Gregory, Leroy Haskins had been twice married and had a 15-year-old child.

More significantly, the report showed Leroy Haskins had been convicted of attempted burglary in Sacramento in 1966.

Even more significantly, the report showed Leroy had been convicted of robbery of a market in Sacramento in 1969. In that episode, Leroy, armed with a handgun, had told the victim, "Stay on the floor mother-fucker, or I'll blow your brains out." He was sentenced to state prison.

Of equal significance, the report showed Leroy had again been convicted of robbery of a retail store in Sacramento in 1977. In that episode, Leroy

had held a knife to a male clerk's throat and had demanded to know where the money was kept. When Leroy had had difficulty finding the money, he had placed a gun to the clerk's head and had told him it was his last chance to tell him where the money was. Leroy Haskins was again sentenced to state prison.

At the conclusion of the February 27 hearing, Judge Tochterman found as a fact that defendant had affirmatively misrepresented his true name and identity. The court vacated the order of probation and gave defendant the choice of whether he wanted to vacate his plea in its entirety or whether he wanted to reaffirm his plea to violation of Health and Safety Code section 11350 and be resentenced without the prior agreement that he would not be sentenced to state prison at the outset. Thereafter, defendant chose to be resentenced on his plea as previously entered, and the court sentenced defendant to state prison for the upper term of three years, with appropriate credit for all time served in county jail.

Defendant appeals, contending the court unlawfully vacated its order of probation.

### DISCUSSION

In vacating the November 17, 1983, order granting probation the trial court expressly relied on *People* v. *Johnson* (1974) 10 Cal.3d 868, 873 [112 Cal.Rptr. 556, 519 P.2d 604]. We conclude *Johnson* does not authorize the trial court's vacating the order in this case.

In *Johnson* the defendant entered a negotiated plea of guilty in return for a promise of a misdemeanor sentence, suspension of sentence, and a grant of probation. (10 Cal.3d at p. 870.) The presentence probation report disclosed the defendant had concealed his true identity and criminal record. (Pp. 870-871.) At defendant's sentencing hearing, the trial court sentenced the defendant to state prison, contrary to the plea bargain. (*Ibid.*) The Supreme Court concluded that, pursuant to Penal Code section 1192.5,[1] "the court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea." (P. 873.) Nonetheless, the court held the trial court erred in failing to follow the procedure of section 1192.5 because the court failed to give defendant a chance to withdraw his plea. (P. 872.)

Section 1192.5 provides in pertinent part that the trial court "may, *at the time set for the hearing on the application for probation or pronouncement of judgment,* withdraw its approval [of a plea bargain] in the

---

[1] All further nondescript statutory references are to the Penal Code.

light of further consideration of the matter . . . ." (Italics added.) The italicized phrase was construed in *Johnson* to mean "upon sentencing." (*Johnson, supra,* 10 Cal.3d at p. 873.) Other courts have assumed the "hearing" specified in the statute means *the sentencing hearing,* an interpretation with which we concur. (See *People* v. *Superior Court (Barke)* (1976) 64 Cal.App.3d 710, 716 [134 Cal.Rptr. 704]; see also *People* v. *Yu* (1983) 143 Cal.App.3d 358, 371-372 [191 Cal.Rptr. 859].) In this case defendant's sentencing hearing had long since passed when the trial court vacated its order of probation. Thus, section 1192.5 and *Johnson* do not authorize the trial court's order vacating the order of probation.

However, the trial court was not without authority to redress the fraud defendant had perpetrated upon it. In *In re Bine* (1957) 47 Cal.2d 814 [306 P.2d 445] our Supreme Court noted that "Probation is an act of clemency and may be withdrawn if the privilege is abused. An abuse of privilege is shown where a defendant practices a deception upon the court at the time probation is granted [citation] . . . ." (P. 817.) Where a defendant obtains probation by refusing to disclose his true identity and criminal record the appropriate remedy is revocation of probation.[2] (*In re Williams* (1972) 28 Cal.App.3d 53, 55 [104 Cal.Rptr. 528].) In this case the trial court chose not to revoke but rather to vacate the order of probation. However, it would be an idle act to reverse the trial court's order and require it to initiate and pursue a revocation of probation. Defendant was accorded the same procedures that he would have been afforded if the court had chosen to revoke probation. (See § 1203.3; Cal. Rules of Court, rule 435; *People* v. *Angus* (1980) 114 Cal.App.3d 973 [171 Cal.Rptr. 5].) ▪▪▪▪▪ Nothing would be gained by requiring the trial court to hold a probation revocation hearing in this case.[3] The law does not require idle acts. (Civ. Code, § 3532; *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561, 579 [199 Cal.Rptr. 796].)

▪ Defendant also contends he should have the option specifically to enforce the terms of his original plea bargain as an alternative to withdrawing his plea. Defendant relies on *People* v. *Kaanehe* (1977) 19 Cal.3d 1 [136 Cal.Rptr. 409, 559 P.2d 1028], *People* v. *Flores* (1971) 6 Cal.3d 305

---

[2]In this case, we have no occasion to address the question whether or to what extent the court may have inherent powers to vacate a sentence to state prison imposed pursuant to a plea bargain obtained by defendant's fraud.

[3]Defendant claims the trial court erred in finding that he affirmatively misrepresented his identity. The contention is specious. Defendant's informing the court on two occasions his name was "Bobby *Earl* Gregory," his acquiescence with counsel's representation he had no criminal record other than traffic violations, and his false statements to his probation officer provide clear and convincing evidence of affirmative misrepresentation of his identity. (See *In re Coughlin* (1976) 16 Cal.3d 52, 56 [127 Cal.Rptr. 337, 545 P.2d 249]; *People* v. *Coleman* (1975) 13 Cal.3d 867, 876-877, fn. 8 [120 Cal.Rptr. 384, 533 P.2d 1024].)

[98 Cal.Rptr. 822, 491 P.2d 406], *People* v. *Delles* (1968) 69 Cal.2d 906 [73 Cal.Rptr. 389, 447 P.2d 629] and *People* v. *Ramos* (1972) 26 Cal.App.3d 108 [102 Cal.Rptr. 502]. However, "absent very special circumstances" (*Kaanehe, supra,* 19 Cal.3d at p. 13), the appropriate remedy is to allow the defendant the opportunity to withdraw his plea, as was done in this case. (*Id.,* at pp. 13-14.) No special circumstances are present here. Defendant's initial misidentification was caused by his phony driver's license. Thereafter, he simply attempted to defraud the trial court and his probation officer and got caught.

### DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 1, 1985.