Filed 9/17/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039252 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC259359) |
| v. | |
| HENG SEM, | |
| Defendant and Appellant. | |

## I. INTRODUCTION

In this appeal we consider how long a term of probation can be extended to compel payment of victim restitution from a probationer who was unable to pay $60,422 in full during her original three-year term of probation.

Restitution for crime victims was recognized as a California constitutional right in 1982. Since 1983, Penal Code section 1203.2, subdivision (a)[1] has provided that restitution shall be consistent with a probationer's ability to pay and that probation cannot be revoked for nonpayment of restitution "unless the court determines that the defendant has willfully failed to pay and has the ability to pay." Since 1959, section 1203.1 has provided that the length of felony probation may not exceed the maximum possible sentence, except that where the maximum sentence is five years or less, probation may last up to five years. (Stats. 1959, ch. 1016, § 1, p. 3038.)

---

[1] Unspecified section references are to the Penal Code.

In *People v. Medeiros* (1994) 25 Cal.App.4th 1260 (*Medeiros*), this court determined that the probation statutes did not authorize extending probation beyond the statutory maximum time by revoking and reinstating probation in order to collect more victim restitution from those who are unable to pay. This appeal challenges a similar practice where probationers unable to pay full victim restitution before the end of their probation are placed in a perpetually revoked status by summary or formal revocation. The decision to reinstate or terminate probation is indefinitely postponed, apparently with the probationer's acquiescence, until long after the expiration of the probationary period. While in this suspended animation, probationers remain subject to the restitution condition (and apparently other probation conditions) and the superior court monitors payments at periodic review hearings.

In this case, defendant was placed on probation for three years in January 2004 after pleading no contest to felony welfare fraud.[2] Defendant's original probationary term was three years, which would have expired in January 2007. Near the end of that term, based on an allegation that defendant had not fully paid victim restitution of over $60,000, her probation was summarily revoked on November 16, 2006. When she implicitly admitted that she had willfully not paid in full, her probation was formally revoked on April 19, 2007. The superior court kept defendant in revoked status for almost six years, until January 15, 2013, while monitoring her restitution payments at intermittent hearings. When defendant's attorney questioned the legality of her status in

---

[2] On August 23, 2002, defendant was charged by complaint with the felonies of fraud in obtaining aid and food stamps between May 1, 1996 and July 31, 2001 (count 1; Welf. & Inst. Code, § 10980, subd. (c)(2)) and concealing that the father of her children was residing with her in an October 2, 2000 application for aid and medical assistance completed under penalty of perjury (count 2; § 118). On November 7, 2003, defendant entered a plea of no contest to count 1 conditioned on a grant of formal probation and dismissal of count 2.

2

January 2013, the trial court reinstated probation and extended it through July 15, 2015. By that date, defendant would have been subject to probation terms for 11½ years on a felony whose maximum sentence is three years.

For the reasons stated below, we will reverse the order reinstating probation after concluding that this practice is unauthorized by the probation statutes. While the lack of a certificate of probable cause precludes some of defendant's contentions on appeal, she is entitled to challenge the unlawful extension of her revoked status. We will further conclude that defendant is not estopped by years long acquiescence from challenging the extension of her probationary status.

## II. TRIAL COURT PROCEEDINGS

### A. INITIAL GRANT AND REVOCATION OF PROBATION

On January 9, 2004, the trial court placed defendant on probation for three years. The probation conditions imposed did not include providing a DNA sample (§ 296, subd. (a)(1)), nor the familiar condition to obey all laws. The court imposed the then-minimum restitution fund fine of $200.00 and waived the criminal justice administration fee and the probation supervision fee. The court ordered restitution to the Santa Clara County Social Services Department, and referred the matter to the Department of Revenue to determine defendant's ability to pay fines and fees.

According to its presentencing report, the probation department had calculated the victim restitution owed as $44,261 in AFDC and $16,161 for food stamps. A "Judgment and Victim Restitution Order" in the amount of $60,422 was entered on November 29, 2004. The order was signed by defendant and the court, reflecting defendant's stipulation to the amount owed and her waiver of a formal restitution hearing.

On November 16, 2006, a "Petition for Modification of Terms of Probation" was filed alleging two violations: "1. The defendant failed to pay her victim restitution to the Department of Social Services in full and owes an approximate balance of $50,739.00." "2. The defendant failed to have her DNA collected pursuant to Section 296 PC. A

3

notification letter was mailed to the defendant on May 16, 2006 and September 14, 2006 . . . ." Probation was summarily revoked the same day and a bench warrant was issued. The bench warrant was served on March 19, 2007.

At a hearing on April 19, 2007, defendant appeared in custody and was assisted by a Cambodian interpreter. The prosecutor asked to continue the hearing to work out a payment plan and to keep probation revoked. When defense counsel asked why probation was being revoked, the court answered: "Because it stops the clock, and to work out a payment plan so that the amount owed to the Department of Social Services through probation, if I revoke probation, in essence it stops the clock from going on further. Otherwise probation runs out."

Defense counsel asserted that defendant had paid $50 a month faithfully according to an agreed payment plan, so there was no violation. The court explained that was not correct. "The presentencing report would show that as a term and condition of probation, she was to pay the full amount to the Department of Social Services. And the payment amount is set, not by the Court, but by the Department of Probation. [¶] So she may have been paying the minimum payments required by the Department of Probation, but she's not amortizing the debt fast enough right now to pay it off within the period of probation. [¶] So in terms of the sentence that was issued by the judge, the defendant is in violation of probation unless she pays this full amount within the period of probation." "And that's why we require the admission and stopping the clock and seeing what payment plan we can work out."

Defense counsel announced they were prepared to do that. The court asked defendant if she admitted "the circumstances of violation set forth in this petition." When defendant answered "[y]es," the court revoked probation, continued the matter to May 1, 2007, and released defendant on her own recognizance after she provided a DNA sample.

4

## B. "VICTIM RESTITUTION CALENDAR"

May 1, 2007 was the first of 15 hearings held over almost six years before various judges on what one judge called "the victim restitution calendar." We have requested and obtained reporter's transcripts of some of those hearings to supplement the form minute orders in the clerk's transcript.

At the May 1 hearing, the prosecutor recited the agreement that defendant would pay $200 monthly for four months, would look for a second job, and would return to court with proof of payments. The court so ordered. At the next hearing on August 28, 2007, the court ordered defendant to provide evidence of seeking a job. On November 27, 2007, defense counsel announced his firm was no longer representing defendant. The court confirmed that probation had been revoked and ordered monthly payments increased to $250.

Hearings were conducted in 2008 on May 20 and November 25, and payments were continued at $250 monthly. On June 2, 2009, monthly payments were increased to $260. On December 1, 2009, the prosecutor stated that defendant had been making payments of $300 a month and would like to continue doing so. A deputy public defender inquired if defendant would like representation. The court again confirmed that defendant was "in revoked status" and referred her to the public defender's office when she expressed interest in having an attorney.

Defendant appeared on August 10, 2010, and March 22, 2011, with counsel, but without a Cambodian interpreter. The prosecutor reported that defendant would like to continue with $300 monthly payments and the court so ordered. At a hearing on September 20, 2011, defendant appeared with counsel and an interpreter. The prosecutor reported that defendant was content to continue paying $300 and the court so ordered.

In 2012 there were hearings on March 27, November 20, and December 4. On March 27, defendant appeared with counsel and an interpreter. The court ordered her to continue paying $300 monthly as requested by the prosecutor, and stated, "As I may have

5

told you before, and I repeat it over and over again, that people are in this calendar as an alternative. No one has a right to be on this calendar. Being on this calendar, in the Court's opinion, is a privilege, and as long as you continue with your consistent payments, you're not going to have any problems with this court." Defense counsel pointed out that defendant's "expiration of probation would have been in 2007, but it was revoked just prior to then." Counsel inquired whether the court had a mechanism for deleting probation conditions other than those requiring payment of fines, fees, and restitution. The court indicated it was possible, and asked the prosecutor to discuss it with defense counsel after the hearing.

At the hearing on November 20, 2012, the prosecutor asked if monthly payments could be increased. Defense counsel said defendant could continue with $300 monthly. "Your Honor, in this matter, I'm going to ask that the Court reinstate her probation. She's pending sentencing on the violation of probation and has been so since April 19, 2007. She has been paying regularly for over five years, and I think she has certainly proven herself on this calendar. And it would be -- I'm requesting that the Court reinstate probation and give her a new five-year grant based on her admission in 2007." The probation officer had no objection, but the hearing was continued for two weeks at the prosecutor's request until the return of the judge who regularly handled these review hearings.

At the hearing on December 4, 2012, defense counsel renewed her request for a "new grant of probation" based on defendant's consistent payment history. The prosecutor objected because, at $300 monthly for five years, defendant would be unable to pay off the full restitution balance, which by then had been paid down to $20,469. The probation officer agreed with defense counsel, and had no objection to the defense request. The court stated, "my only reservation is I don't know when the case was first sent here what was the understanding. If she were able to pay the victim restitution within five years at a rate of $300 a month, I would reinstate probation and impose a new

6

five-year grant. I calculate it would take $350 per month to pay off full victim restitution . . . ."

Defense counsel stated that defendant could not pay more than $300 monthly. "But, Your Honor, I mean, if there is -- it seems to me that the law does not require that a person pay off victim restitution in full while on probation. What the law requires is that a person pay to the best of their ability while they're on probation. There is a mechanism for collection after someone gets off probation. Ms. Sem is, in my view, a perfect candidate for reinstating probation, given that she has been consistently paying on this calendar for five years -- more than five years. If she can't get her probation reinstated, you know, it's unclear to me who can. What do you have to do to prove yourself on this calendar?"

The court agreed with what defense counsel said, but expressed concern about "what was the understanding when she was brought to this calendar. In other words, was there going to be an alternative to this calendar and she agreed to come to this calendar with counsel[?] I don't know if she had an attorney at the time with the understanding that she pay full victim [*sic*], which occurs on some of the cases. Some of the cases it does not." The court later commented, "I agree there are cases where I believe there is enough information for me to conclude there was an understanding that the probationer was to pay full victim restitution while on revoke status. There are cases where I see consistent payments, demonstration of responsibility, and restitution could be paid within a period of probation supervision . . . ." Defense counsel agreed to provide the transcript of the March 29, 2007 hearing, but expressed frustration with having to do so. The court ordered defendant to continue paying $300 monthly and scheduled a further review for January 2013.

At a hearing on January 15, 2013, based on the reporter's transcripts from 2007, defense counsel questioned why defendant had been on probation for nine years, noting that previous counsel had allowed her to admit a violation of probation without a factual

7

basis.  Counsel asked that probation be reinstated and terminated.  The prosecutor argued

there was a basis for the admission and that defendant still owed $19,869.

The court summarized the case history for the record:

> "I'll just note that probation was granted on January 9, '04.  It was set to expire January 9, '07.  She was given an initial eight days in the county jail, credit for time served.  There was a VOP on November 16, '06.  Defendant was not present.  The bench warrant was issued and probation was revoked.  We've already made comments about the circumstance in violation that were contained in the petition for the November 16, '06 date and they speak for themselves.

> "On March 29, '07, your client appeared in custody on a warrant with counsel.  Based on the transcript, counsel represented to the Court the defendant was going to admit the violation.  I will note that the recommendation was essentially a new five-year grant.  It appeared to have essentially resulted in a CTS.  There was no interpreter present, so the case was continued to April 19, '07.

> "On April 19, '07, apparently the defendant, or her family, had paid $4,000 to the Department of Social Services.  The defendant did -- I mean, defense counsel did comment why was probation being revoked, and the -- I believe the Court -- at least in my opinion, I disagree with the Court's explanation, that it stops the clock and works out a payment plan owed to the Department of Social Services.  That technically is correct.[3]

> "In any event, the defendant did admit the violation of probation at that point."

The court continued:

> "And then the matter was put to the victim restitution calendar where it has been since.  I've given this particular case a lot of consideration in light of the consistency in payments, what occurred in this particular case, and I don't believe in this particular case what is appropriate is to reinstate and terminate, granted your client I don't believe understood what was going on, or maybe she did.  I don't know what was explained to her.  But it appears to me the lawyer was not real sure what could or could not occur

---

[3]  There appears to be a transcription error in the court announcing its disagreement with a statement that it then described as correct.

and essentially what was happening, asking the Court for an explanation on various points.

"Nevertheless, the sense I get is the primary consideration in this particular case was that the defendant wanted to get out [of] custody and whatever it took was going to try to accomplish that. I believe that if the Court had followed probation's recommendation and issued a new five-year grant, she would have been released. If that had occurred, probation would expire April 19, 2012.

"Based on the admission, based on her agreement through counsel to remain in revoke status and come to this particular calendar, based on everything I've looked at, I think the most equitable thing to do in this particular case, and I've already said this a number of times, based on everything I've looked at but also because of her consistency in making regular payments, the Court is going to reinstate probation on the original terms and conditions and extend it to the full five-year grant without the tolling. Probation should have expired now on January 9, 2015. There was a period where probation was in revoked status properly. So we're going to have to add that time on."

The court calculated a five-month tolling period between summary revocation on November 16, 2006 and formal revocation on April 19, 2007. The court said that defendant had "agreed to going to revoke status. Whether that was appropriate or not, that is what occurred." On January 15, 2013, over defense counsel's objection that defendant had already been placed on probation for nine years, the court reinstated probation "on the original terms and conditions" through July 15, 2015 with minimum monthly payments of $300.

### III. ANALYSIS

#### A. THE NEED FOR A CERTIFICATE OF PROBABLE CAUSE

We have obtained supplemental briefing discussing the application of section 1237.5 to defendant's contentions on appeal. Section 1237.5 requires a defendant to obtain a certificate of probable cause to appeal from "a judgment of conviction upon a plea of guilty or nolo contendere, *or a revocation of probation following an admission of violation . . . .*" (Emphasis added.)

In this case, defendant has not appealed from the April 19, 2007 revocation of probation following her admitted violations, but that order was not directly appealable. An order revoking probation while imposition of judgment is suspended is not directly appealable, but is reviewable on appeal from the judgment following the revocation. (*People v. Robinson* (1954) 43 Cal.2d 143, 145; *People v. Delles* (1968) 69 Cal.2d 906, 908-909; *People v. Avery* (1986) 179 Cal.App.3d 1198, 1201, fn. 5; contra *People v. Woods* (1978) 84 Cal.App.3d 149, 154.) It is the disposition after a probation revocation that is appealable. Defendant correctly contends that the January 15, 2013 order reinstating and extending probation was the first ruling appealable essentially as an order after judgment affecting defendant's substantial rights. (§ 1237, subd. (b); *In re Bine* (1957) 47 Cal.2d 814, 817; *People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1421.)

The purpose of requiring defendants to obtain certificates of probable cause is to save judicial time and prevent frivolous appeals of matters that were resolved by plea or admission. (*People v. Maultsby* (2012) 53 Cal.4th 296, 299, 304; *People v. Billetts* (1979) 89 Cal.App.3d 302, 307 (*Billetts*).) Matters occurring before a plea of guilty or no contest that affect the plea's validity cannot be raised without a certificate of probable cause. (*People v. Kaanehe* (1977) 19 Cal.3d 1, 8 (*Kaanehe*).) *Billetts* concluded that "the same principles apply" to an admission of a probation violation. (*Billets*, *supra*, 89 Cal.App.3d at p. 308.) "Absent a certificate of probable cause, the issues raised by defendant concerning the validity of his admission of violation of probation[] are not reviewable on appeal." (*Ibid.*)

California Rules of Court rule 8.304 has incorporated two exceptions to the certificate requirement in section 1237.5. As defendant is not seeking further review of a ruling on a suppression motion (§ 1538.5, subd. (m)), the relevant exception pertains to raising post-plea issues. The California Supreme Court has "held that section 1237.5 does not apply where a defendant does not challenge the original validity of the plea but asserts that errors were committed in proceedings subsequent to the plea for the purpose

10

of determining the penalty to be imposed. (*People* v. *Ward* (1967) 66 Cal.2d 571, 574; *People v. Delles* (1968) 69 Cal.2d 906, 909.)" (*Kaanehe*, *supra*, 19 Cal.3d at p. 8.) A certificate is required for some sentencing challenges. A challenge to any part of the sentence to which the defendant agreed in a plea bargain is regarded as a challenge to the validity of the plea. (*People v. Shelton* (2006) 37 Cal.4th 759, 766; *People v. Panizzon* (1996) 13 Cal.4th 68, 79.) "[T]he critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*Id.* at p. 76.)

We examine defendant's appellate contentions in this light. In the context of arguing that her trial counsel was ineffective at the revocation hearing in April 2007, defendant asserts there was insufficient evidence to establish that she willfully violated probation. The evidence of defendant's violations was her admission of the allegations in the petition to modify probation. This court has explained that "a plea of guilty or no contest waives an appellate claim of the nature 'there is insufficient evidence supporting my plea.'" (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1365.)

Defendant contends, though she admitted "the circumstances of violation set forth in this petition," she did not admit either that she willfully failed to pay restitution while having the ability to pay or that she willfully failed to provide a DNA sample, because the petition to modify did not expressly allege either willfulness or an ability to pay. All the petition alleged was that "defendant failed to pay her victim restitution . . . in full and owes an approximate balance of $50,739.00."

As this court stated in *People v. Rodriguez* (2013) 222 Cal.App.4th 578 at page 594: "It is well established that a probation violation must be willful to justify revocation of probation. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 379 ; *People v. Galvan* (2007) 155 Cal.App.4th 978, 982; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; § 1203.2, subd. (a).)" Section 1203.2, subdivision (a) prohibits revoking probation "for failure of a person to make restitution pursuant to Section 1203.04 as a condition of

probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay." When a failure to pay restitution is not shown to be willful, probation may be modified, but not revoked.

Because a willful violation is a prerequisite to revoking probation, we find willfulness to be reasonably implicit in the allegations of probation violations, as the Attorney General contends. A failure to pay restitution is only willful if the probationer had the ability to pay more, so we conclude that the ability to pay also was reasonably implicit in that alleged violation. By admitting that implicit allegation, defendant admitted circumstances justifying the revocation of probation. (Contra, *In re Angel E.* (1986) 177 Cal.App.3d 415, 421.) To the extent defendant challenges the adequacy of the violation allegations, it is a challenge to the validity of her admissions, which she may not do without a certificate of probable cause.

A certificate of probable cause is also prerequisite to our review of defendant's claim that her trial counsel was incompetent in advising her to admit the probation violations. "A defendant who challenges the validity of such a plea on the ground that trial counsel rendered ineffective assistance in advice regarding the plea may not circumvent the requirements of section 1237.5 by seeking a writ of habeas corpus" (*In re Chavez* (2003) 30 Cal.4th 643, 651) or by claiming ineffectiveness on appeal without a certificate. (Cf. *People v. Johnson* (2009) 47 Cal.4th 668, 683 [certificate required to assert that trial counsel was ineffective in moving to withdraw guilty plea]; *Billetts*, *supra*, 89 Cal.App.3d 302, 305, 308 [certificate needed to challenge judicial advice about change of plea]; *People v. Turner* (1975) 44 Cal.App.3d 753, 756 [same].)

The Attorney General concedes that defendant is entitled to challenge the lawfulness of the orders that followed from her admissions without a certificate of probable cause. *Billetts*, *supra*, 89 Cal.App.3d 302 determined that the lack of a certificate did not preclude a defendant from questioning whether a judgment was properly imposed following revocation of probation due to the lack of formal

12

arraignment. (*Id.* at p. 308.) "[T]he primary purpose for a certificate of probable cause is not present" when the defendant contends "that the sentence imposed following the finding that defendant was in violation of probation was illegal . . . ." (*Id.* at p. 307.) We therefore limit our review to the court's actions that were based on her admitted probation violations.

### B. PROBATION REVOCATION FOR NONPAYMENT

It is well settled that the payment of restitution to a crime victim may be ordered as a condition of probation. (§ 1203.1; see Stats. 1935, ch. 604, § 2, p. 1708; Stats. 1982, ch. 1413, § 6, pp. 5403-5404; Stats. 1977, ch. 1123, § 6, p. 3607.)[4] Based on an alleged probation violation, the trial court may summarily revoke probation in order to preserve its jurisdiction pending a formal revocation hearing. (§ 1203.2, subd. (a); (*People v. Leiva* (2013) 56 Cal.4th 498, 505 (*Leiva*).) When a probation violation is established, the court may modify, revoke, terminate, or reinstate probation. (§§ 1203.2, subd. (b)(1); cf. 1203.1, subd. (j); 1203.3, subd. (a).) Felony probation may last up to the maximum possible sentence, except that where the maximum sentence is five years or less, probation may extend up to five years. (§ 1203.1, subd. (a).)

The authority to revoke for nonpayment of restitution was limited by a 1983 amendment to section 1203.2, subdivision (a) that provided: "However, probation shall not be revoked for failure of a person to make restitution pursuant to Section 1203.04 as a condition of probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay. Restitution shall be consistent with a person's ability to

---

[4] By initiative in 1982, victim restitution was established as a California constitutional right in every case of a criminal conviction, even if the defendant is sentenced to prison. (Cal. Const, art. I, § 28, subd. (b); *People v. Giordano* (2007) 42 Cal.4th 644, 652.)

13

pay." (Stats. 1983, ch. 568, § 2.5, p. 2435; Stats. 2012, ch. 43, § 30, 1 West's Cal. Sess. Laws p. 1995.)[5]

*People v. Cookson* (1991) 54 Cal.3d 1091, 1096 (*Cookson*) interpreted the 1983 amendment as codifying the holding of *Bearden v. Georgia* (1982) 461 U.S. 660 (*Bearden*). *Bearden* concluded that it would violate fundamental fairness to imprison a probationer "'simply because, through no fault of his own, he cannot pay the fine.'" (*Cookson*, *supra*, at p. 1097.) *Cookson* also determined that, even though probation cannot be revoked without a prior violation and a nonwillful failure to pay is not a revocable violation, a nonwillful failure to pay the full amount of restitution is a change in circumstances authorizing a court to modify probation by extending it. (*Id.* at pp. 1095, 1098.) *Cookson* upheld an order extending the probationary period from three years to five to assure that restitution would be made. (*Id.* at pp. 1093, 1100.)

In *Medeiros*, *supra*, 25 Cal.App.4th 1260, this court considered an order that purported to reinstate probation and extend it for a second five-year period just before the original five-year period expired. The trial court had found no violation of probation, but

_____

[5] Several statutes contemplate enforcing unpaid victim restitution orders as civil judgments. A victim restitution order "may be enforced in the same manner as a judgment in a civil action, if any balance remains unpaid at the end of the defendant's probationary period." (§ 1203, subd. (j), Stats. 1985, ch. 1487, § 3, p. 5467; cf. § 1202.4, subd. (i) [mandatory victim restitution order under section 1202.4, subdivision (f) "enforceable as if the order were a civil judgment."], Stats. 1994, ch. 1106, § 3, p. 1106; § 1203.1, subd. (a)(3) ["The restitution order shall be fully enforceable as a civil judgment forthwith and in accordance with Section 1202.4 of the Penal Code."], Stats. 1998, ch. 931, § 393.5, p. 6611; § 1214, subd. (b) ["In any case in which a defendant is ordered to pay restitution, the order to pay restitution (1) is deemed a money judgment if the defendant was informed of his or her right to have a judicial determination of the amount and was provided with a hearing, waived a hearing, or stipulated to the amount of the restitution ordered, and (2) shall be fully enforceable by a victim as if the restitution order were a civil judgment, and enforceable in the same manner as is provided for the enforcement of any other money judgment."], Stats. 2000, ch. 545, § 2, p. 3705.)

14

extended probation to require further payment of victim restitution. (*Id.* at pp. 1262-1263.) The trial court had based its order on subdivision (e) of section 1203.2, which was not discussed in *Cookson*.[6] As *Medeiros* explained, that subdivision was intended to give trial courts the option, if the probationary period expired after probation was timely revoked, to set aside a revocation and reinstate probation, rather than limiting courts to pronouncing a judgment under those circumstances. (*Medeiros*, *supra*, at pp. 1265-1266.) The subdivision presupposes a revocation of probation due to a violation. (*Id.* at p. 1266.) *Medeiros* found it inapplicable when probation cannot be formally revoked because the only violation is a nonwillful failure to pay restitution. (*Ibid.*) *Medeiros* concluded, "As *Cookson* stated, the amendment of subdivision (a) of section 1203.2 was intended to prevent imprisonment of probationers who have simply been unable to fully pay restitution. All the court can do is modify and extend probation to the maximum term. If the probationer remains unable to fully pay restitution throughout the maximum term, the trial court lacks authority either to revoke and imprison or to further extend probation and, instead, must discharge defendant from probation pursuant to section 1203.3, subdivision (b)." (*Id.* at p. 1267; fn. omitted.)[7]

---

[6] Section 1203.2, subdivision (e) provides in full: "If probation has been revoked before the judgment has been pronounced, the order revoking probation may be set aside for good cause upon motion made before pronouncement of judgment. If probation has been revoked after the judgment has been pronounced, the judgment and the order which revoked the probation may be set aside for good cause within 30 days after the court has notice that the execution of the sentence has commenced. If an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period, the court may again place the person on probation for that period and with those terms and conditions as it could have done immediately following conviction."

[7] Although *People v. Jackson* (2005) 134 Cal.App.4th 929 (*Jackson*) relied on some of the reasoning of *Medeiros* (*id.* at p. 931), other passages in that opinion contradict *Medeiros* by suggesting that probation can be revoked for simple nonpayment of restitution without further findings of willful nonpayment despite an ability to pay (*id.*

*(Continued)*

15

While the premise of *Medeiros* was a trial court's order extending probation despite finding the probationer was not in violation of her probation (*Medeiros, supra,* 25 Cal.App.4th. at pp. 1262-1263), the opinion also discussed a trial court's options upon finding a willful probation violation at the end of the original probationary term. Part of section 1203.2, subdivision (e), provides, "If an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period, the court may again place the person on probation for that period and with those terms and conditions as it could have done immediately following conviction." We noted that cases had relied on the 1957 amendment "to authorize reimposing probation beyond the initial maximum term when probation was timely revoked, the initial term expired, and the revocation was set aside. (*People v. Gish* [(1964)] 230 Cal.App.2d 544, 546; *People v. Carter* [(1965)] 233 Cal.App.2d 260, 268; *People v. Daugherty* (1965) 233 Cal.App.2d 284, 289; *In re Hamm* [(1982)] 133 Cal.App.3d 60, 66-67.) *People v. Gish, supra,* held that the probation maximum stated in section 1203.1 was applicable only 'to the granting of probation in the first instance.' (230 Cal.App.2d at p. 546, fn. 1; cf. *In re Hamm, supra,* 133 Cal.App.3d at p. 67.)" (*Medeiros*, *supra*, at pp. 1265-1266.) Each of the cited cases involved probation being revoked and reinstated for a longer period of time than either the original term of probation or five years, though none involved a failure to pay restitution.

In this case, the original three-year probationary term was due to expire by its own terms on January 9, 2007. However, the trial court summarily revoked probation on November 16, 2006 based partly on allegations of nonpayment. Under a 1977

___

at p. 935) and that the trial court was authorized by section 1203.2, subdivision (e) to reinstate and extend probation for another five years based on such a violation. (*Id.* at p. 937.) *Jackson* contains no discussion of the 1983 amendment of section 1203.2, subdivision (a). Nothing in *Jackson* causes us to reconsider our conclusions in *Medeiros*.

amendment to section 1203.2, subdivision (a), "The revocation, summary or otherwise, shall serve to toll the running of the probationary period." (Stats. 1977, ch. 358, § 1, p. 1330; *Medeiros*, *supra*, 25 Cal.App.4th at p. 1267.) By virtue of the summary revocation, the trial court retained jurisdiction over defendant at the revocation hearing on April 19, 2007. Based on an admission that defendant had willfully failed to pay restitution, the trial court could have revoked probation and, as an alternative to sentencing defendant to prison, could have reinstated probation "for that period and with those terms and conditions as it could have done immediately following conviction." (§ 1203.2, subd. (e).) Because the maximum prison sentence for felony welfare fraud is three years, the court could have reinstated probation for up to five more years, until April 19, 2012. (§ 1203.1, subd. (a).)[8]

The trial court exercised none of its statutory options upon formally revoking probation on April 19, 2007. It did not discharge defendant from probation. It did not sentence defendant to prison. It did not reinstate probation on modified terms, at least not before January 15, 2013. Trial courts are authorized to suspend imposition of sentence when granting probation, but we have found no authority for suspending imposition of probation.

The Supreme Court recently elaborated on the function of summary revocation. "'[S]ummary revocation gives the court jurisdiction over and physical custody of the defendant and is proper if the defendant is accorded a subsequent formal hearing in conformance with due process. [Citation.] [¶] Therefore, after the summary revocation, the defendant is entitled to formal proceedings for probation revocation. The purpose of

---

**[8]** Whether the trial court could have again extended probation beyond April 19, 2012 upon again finding willful failure to pay restitution is not before us and we do not intend to suggest an answer to that question.

17

the formal proceedings is not to revoke probation, as the revocation has occurred as a matter of law; rather, the purpose is to give the defendant an opportunity to require the prosecution to prove the alleged violation occurred and justifies revocation. [Citation.]'" (*Leiva*, *supra*, 56 Cal.4th 498, 505.)[9]

Although the central issue in *Leiva* involved an attempt to establish a probation violation that occurred after the court-imposed probationary period had elapsed, the reasoning of *Leiva* extends further in recognizing that tolling following summary revocation is a procedural mechanism for preserving the court's jurisdiction to adjudicate whether a probation violation has occurred during the previously imposed probationary period. It is not a mechanism for extending that probationary period beyond its statutory time limits.

The superior court here has created a status of perpetual revocation in which a probationer remains obligated to comply with a probation condition requiring payment of restitution (and other probation conditions) for a substantial time after the maximum probationary period. The practical effect of this status is a reinstatement of probation on the same terms for an indefinite period. This court recently examined the systemic nature of this practice and concluded that summary revocation and the tolling provision do not "allow trial courts to retain jurisdiction to modify or extend a probationary term indefinitely." (*People v. Freidt* (2013) 222 Cal.App.4th 16, 23, fn. omitted.) In that case,

---

[9] In *Leiva*, *supra*, 56 Cal.4th 498, though the trial court had ordered victim restitution among other probation conditions, the Supreme Court noted that "the prosecution never alleged a probation violation based on defendant's willful failure to pay the full amount of restitution, nor did the prosecution offer any evidence that defendant had in fact willfully failed to pay the ordered restitution. Had the prosecutor alleged such a violation, and had the trial court determined that defendant willfully failed to pay restitution during the probationary period and that defendant had had the ability to pay at that time, a violation of probation based on failure to pay restitution could have been found at the formal probation hearing . . . ." (*Id.* at p. 516, fn. 6.)

18

unlike this one, the court placed the defendant in revoked status for about 30 months after the expiration of her probation term without purporting to hold a formal revocation hearing based on allegations of nonpayment of fines and fees and victim restitution of $40,000. (*Id.* at p. 18.)

The Attorney General suggests that the summary revocation, or perhaps the formal revocation, tolled defendant's probationary period until the court elected to reinstate and extend it. We agree that the summary revocation tolled the probationary period for five months and three days until defendant appeared at the revocation hearing, but we reject the suggestion that formal revocation further tolled the probationary period. At that time, with defendant before the court, the court was obliged to either reinstate probation or sentence defendant to prison. It was not authorized to postpone its disposition and thereby impose a de facto reinstatement of probation on the same terms for a period exceeding the statutory maximum of five years.

### C. DEFENDANT IS NOT ESTOPPED FROM CHALLENGING REVOCATION AND REINSTATEMENT

The Attorney General relies on in *In re Griffin* (1967) 67 Cal.2d 343 (*Griffin*) to assert that defendant may not challenge her probation revoked status after her long acquiescence in it. The defendant in *Griffin* was admitted to probation on condition that he make monthly restitution payments of $100. He failed to make the payments and a revocation hearing was scheduled for shortly before probation was to expire. The defendant obtained a continuance of the hearing in order to hire private counsel. After the hearing and revocation the defendant pointed out that the probationary term had lapsed in the interim. Whether the court had jurisdiction to revoke probation was raised by petition for habeas corpus. (*Id.* at p. 345.)

The Supreme Court rejected the notion that untimely revocation deprived the trial court of subject matter jurisdiction. (*Griffin, supra,* 67 Cal.2d. at p. 347.) The court discussed general principles of estoppel: "When, as here, the court has jurisdiction of the

19

subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when 'To hold otherwise would permit the parties to trifle with the courts.' [Citation.] On the other hand waiver of procedural requirements may not be permitted when the allowance of a deviation would lead to confusion in the processing of other cases by other litigants. [Citation.] Substantive rules based on public policy sometimes control the allowance or disallowance of estoppel." (*Id.* at pp. 347-348.) Specifically, the court concluded that, "[b]y seeking a continuance to a time beyond the end of the probationary term [the defendant] asked the court to do in a manner that was in excess of jurisdiction what it could have done properly by immediately revoking probation and continuing the matter for a hearing and determination as to the alternatives of reinstatement of probation or imposition of sentence." (*Id.* at pp. 348-349.)

Unlike *Griffin*, defendant did not request the actions which resulted in the systematic delays here. (Cf. *In re Dupper* (1976) 57 Cal.App.3d 118, 124.) On April 19, 2007, defendant asserted that she had paid what her payment schedule had required. She only admitted violating probation after the court explained that "we require the admission" to stop "the clock and see[] what payment plan we can work out." The trial court implied that she was facing revocation and custody if she did not admit the alleged violations. Apparently because the court believed that defendant could be kept in perpetually revoked status, the court did not explain that it could reinstate probation for up to five more years as an alternative to a prison sentence. The proposal to "stop the clock" and work out an extended payment plan came from the court, not defendant.

20

We therefore conclude that defendant is not estopped from challenging the superior court's formalized practice of indefinitely extending revocation to collect restitution. We emphasize that nothing in our decision precludes enforcing the victim restitution order as a civil judgment.

### IV. DISPOSITION

The order of January 15, 2013 reinstating probation is reversed, and the trial court is directed to order defendant discharged from probation.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.

Trial Court:                                    Santa Clary County Superior Court
                                                Superior Court Case No.:  CC259359


Trial Judge(s):                                 Honorable Arthur Bocanegra, lead Judge
                                                Honorable Randolf J. Rice
                                                Honorable Jerome S. Nadler


Attorney for Defendant and                      Ronald L. DeHoff, Esq.
Appellant, HENG SEM


Attorney for Plaintiff and Respondent:          Lisa H. Ashley-Ott
THE PEOPLE                                      Office of the Attorney General